382

Robert M. CHILDS III et ux *v.* Dwayne
GOODE, Jack HENDERSON, Tommy WATSON,
Jerry D. BELL, and G.H.W., Inc.

76-378                                      548 S.W. 2d 827

Opinion delivered April 4, 1977
(Division I)

*George F. Hartje,* of *Hartje & Burton,* for appellants.

*Clark, McNeil & Watson,* for appellee.

FRANK HOLT, Justice. Appellants sought an injunction to
restrain appellees from interfering with their possession of
leased property. The chancellor dismissed the suit and

ordered the lease cancelled, in view of a zoning ordinance, for failure of appellants to comply with the use and occupancy provision of the lease. For reversal appellants assert that the court erred in finding that the lease placed an affirmative duty upon the appellants to operate a grocery store in the leased premises. We cannot agree.

Appellee Bell leased his grocery store to appellants in October, 1974, for a five year term. In January, 1976, Mr. Childs closed the store and continued to pay rent after he moved his stock to a nearby location. In March, 1976, Bell deeded the property to appellee G.H.W., Inc., (Goode, Henderson and Watson). Shortly thereafter, G.H.W., Inc., removed from the closed grocery store certain fixtures and equipment left by Childs. This resulted in appellants bringing an action to enjoin appellees' interference and to compel the return of the removed articles. Appellees invoked Paragraph A-4 of the lease which provides:

> To use and occupy the premises for retail grocery store outlet purposes only and for no other object or purpose without the written consent of the lessor. . . .

The property is located in a residential area and its nonconforming use as a grocery store was permitted by a grandfather clause inasmuch as it was used as a grocery store preceding the enactment of the zoning ordinance. The ordinance provides that the privileged status of the property would be lost if the "nonconforming building . . . becomes vacant" and "unoccupied" for a period of 18 months. There is a provision to toll this restriction if the vacant building is reoccupied within the 18 months' limitation. Thus, a continuation of the grocery business was necessary, as expressly recited in the lease, to meet the requirements of the ordinance. In other words a vacant building, even though appellants continued to pay the rent, was not in conformity with the intentions of the parties as expressed in the lease. See *Kahn* v. *Wilheim*, 118 Ark. 239, 177 S.W. 403 (1915); and *Amon* v. *Cummings*, 67 Atl. 2d 687 (1949). Here the terms of the lease were clear and unambiguous.

In a subordinate argument, appellants assert that the closing of the store was consented to by the lessor Bell and,

therefore, the lessor is estopped from requiring continuous operation of the store since he accepted rent payments for two months after the closing of the store. Suffice it to say that Childs wanted out of the lease and was aware of the negotiations to sell the building to appellee purchasers pending successful resolution of their efforts for permission from the city to remove the building, rebuild and then continue the nonconforming use. This was accomplished within two months after appellants closed the building and moved their grocery business to another location.

Appellants next argue that the appellee purchasers cannot complain of a breach of covenant which occurred before their purchase. The purchasers acquired the property subject to the restrictive covenant in the lease. Therefore, a sufficient answer to appellants' contention is that the covenant by appellants to operate a grocery store was breached after appellee purchasers bought the property.

Affirmed.

We agree: HARRIS, C.J., and GEORGE ROSE SMITH and BYRD, JJ.